By the Court.
Oakley, Ch. J.
This case comes before us upon an appeal from the judgment entered at special term, upon the report of the referee, to whom the same was referred. The action was instituted by the respondent against the appellants, to recover- damages for a refusal of the street-commissioner to execute a contract with the respondent, to which he *223 claims to be entitled; and also for a refusal by tbe appellants, to make the necessary appropriations therefor. It seems that an ordinance was adopted by the common council, on the 15th of January, 1819, for the regulating and paving of Twenty-second-street, between .the Sixth and Seventh avenues. The street-commissioner, acting under this ordinance,, advertised for proposals and estimates for the performance of the work. Proposals and estimates were put in by the respondent,’and by, several others. The street-commissioner, upon opening the proposals, rejected all of them, with the exception of the respondent’s, on the ground of their informality. The proposals of the respondent, therefore, stood alone; and although higher than some of those which were rejected, he claims that the contract should have been awarded to him as the lowest bidder, and that he is entitled to recover from the appellants the profits which he would have been enabled to realize from a performance of the contract. The referee accorded to. him damages to the amount of $6172.11. Accompanying his report, he has given an opinion, reviewing the grounds of the controversy, and giving at length the reasons of the conclusion to which he arrived.
It is necessary to an understanding of the several points which were raised in the course of the argument, to refer to several sections of the statute amending the charter of the city. In consequence of numerous abuses which were supposed to have arisen under the former charter, an act was passed by the legislature, on the 2d of April, 1819, making various alterations in it. The first section of this act provides that the legislative power of the corporation shall be vested in the board of aldermen and assistants, and by the ninth section, the executive power is given exclusively to the mayor and heads of departments. The twelfth section provides that there shall be an executive department, under the denomination of the street department, which shall have cognizance, among other things, of opening, regulating, and paving streets. Section twenty-one provides that the several executive departments, and the officers thereof, shall be subject to the legislative regulations and *224 directions of the common council. By section twenty-third, it is provided, that all contracts to be made or let by the common council for work to be done, shall be made by the appropriate heads of department, under such regulations as shall be established by the ordinances of the common council. These are all the provisions of the act amendatory of the charter, which it is necessary to consider in this case. Under this law, the corporation established a body of ordinances, to some of which it is necessary for us to refer.
The one hundred and fifty-eighth section of the ordinances provides, that the street-commissioner shall have power to make contracts for the regulating, paving, and repairing of streets, under ordinances of the common council; and the one hundred and sixty-second section gives him the power to advertise for estimates and contracts for such work. The last title in this book of ordinances prescribes the regulations under which this power shall be exercised. It is there provided, that all work to be done for the corporation shall be performed by contract, and that all contracts must be authorized by the common council; and when so authorized, shall be made by the head of the department under whose direction the work is to be performed. The four hundred and ninety-fourth section provides that “ no such contract shall be made, until proposals therefor have been advertised, and estimates received and decided upon, as provided by this ordinance, except when otherwise provided by law; and that no contract for a sum exceeding five hundred dollars shall be signed or executed, until such contract, and all the estimates relating thereto, shall have been laid before 'the common council, and an appropriation made therefor.”
This section is very material in the consideration of this case, and upon it one of the principal points upon the part of the appellants turns.
Section four hundred and ninety-six prescribes the regulations under which the proposals shall be offered; among other requisites, the proposal must state the amount in which security will be required for the performance of the contract. Section four hundred and ninety-nine provides, that each estimate shall *225 be accompanied by tbe consent, in writing, of two householders or freeholders, to become sureties. The title next provides for the opening,of the proposals by the street-commissioner; and then follows that part of the section on which the respondent relies, i. e., that the street-commissioner shall reject all estimates which are not furnished in conformity with the requirements of the ordinance ; and shall thereupon award the contract to the lowest bidder.
The facts in this case, some of which have been alluded to, are briefly, that the street-commissioner, acting under an ordinance of the common council directing the work to be done, advertised for proposals and estimates for the regulating and paving of a portion of Twenty-second-street. The respondent put in his estimates and proposals, which were found regular. The others which were offered, being rejected for their irregularity, that of the respondent’s stood alone. A clerk in the office of the street-commissioner, called the contract clerk, proceeded to draw up the contract in the usual manner, in conformity with the proposals of the respondent. The respondent offered to execute it; but by the directions of the street-commissioner, it was not executed.
There appears to be some uncertainty whether the contract, as prepared, was laid before the common council. It is admitted that the estimates and proposals were, and we assume that the contract was in like manner submitted. The common council refused to make the necessary appropriations, and the contract was not executed; and the work was permitted to be done by others; but whether under a contract with any other person, does not appear.
The action of the respondent is founded upon this state of things; and it is contended by him, that when he put in his proposals and estimates, and all the others were rejected, he was entitled to the contract; and that there was no power in the common council to withhold it from him; and that they having refused to let him perform the work, he has a right to recover, as damages, the profits which he would have made, ■ had the oontract been awarded to him.
*226 There are two grounds of defence to his action, either of which, if held to be valid, is a bar to the respondent’s right of recovery.
1st. That the street-commissioner did not act in compliance with the ordinances of the common council, in advertising for proposals and estimates, by reason of his neglecting to name the amount which would be required as security for the performance of the contract.
2d. That it was competent for the common council, when the proposals and estimates were submitted to them, to decline making the necessary appropriations for carrying the proposed contracts into execution.
We think that both of these grounds of defence are valid.
As to the first, the omission on the part of the street-commissioner to state the amount in which security would be required for the performance of the contract, was a violation on his part, of the corporation ordinances. It is clear, we think, that he had no power to dispense with any of the regulations provided by the legislative power of the common council, or to bind the city by a contract not made in accordance with them. We cannot regard the street-commissioner as acting in the capaoity of an agent of the corporation. He is an independent public officer, acting under certain laws, and having no power, except as he acts in conformity with them.
We think that, by his omission to state the amount it would be necessary for the contractor to give as security, he neglected his duty, and could not bind the city, even if the contract had' been signed. Other and lower proposals were rejected for not being in conformity with the regulations prescribed; and we cannot see on what ground the street-commissioner could retain that of the respondent, which was also defective. The certificate of the mayor, which is required to be given as to the sufficiency of the sureties, and which was given in this case, and offered by the respondent to the street-commissioner, relates not to the amount which the street-commissioner had determined to be necessary for the security of the city, for none had been fixed by him, but to a specific sum named in the certifi *227 cate, which might or might not be sufficient for that purpose.
It is said that the street-commissioner, acting as the agent of the corporation, dispensed with the regulation alluded to, and that the respondent was thereby released from a strict compliance with its terms. This view of the matter is not sound. If he could disregard the ordinance as to the amount of the security to be required, he might as rightfully dispense with security altogether. The fallacy of the respondent’s argument consists in considering the street-commissioner as an agent having power to bind his principal generally. Whereas, if an agent in any sense, he is one acting under special instructions; from which he could not depart, and of which the plaintiff was bound to take notice.
Apart from any further consideration of this point, the more important question is, whether under a true construction of the statute and the ordinances, where proposals are regularly made, and the street-commissioner has decided that a person is entitled to the contract, the common council have the power to say that they will not go on with the work and carry out the contract. It is very clear they would have no power to take the contract from the person to whom it had been awarded, and give it, to another. But the question is, whether they have a right to say they will not go on with the work at all, or at the expense involved in the contract proposed. It is provided by one of the sections of the book of ordinances before referred to, that no contract for a greater amount than five hundred dollars (and the contract in this case is of that character) shall be signed or executed (that is, as we understand it, no contract shall be formally made) until such contract, and all the estimates relating thereto, shall be laid before the common council and an appropriation made therefor. We think there can be no reasonable doubt of the effect of this section. It is to reserve to the common council the liberty to make the appropriation or not, as the interests of the city may require. An improvement may be often ordered to be made, without any accurate information as to the extent of the expenditure *228 involved in it. When that becomes known by a proposed contract, it may well be that the charge, either upon the city or upon individuals whose property may, be liable to be assessed to carry it out, will be so onerous as to render it expedient to abandon the work. It is essential that the city government should have the right to do so, under such circumstances.
It is suggested that there is a distinction in this case between the making of a contract and the signing and executing of it, and that the signing and executing of the contract refers to its formal execution only. We cannot think so, but must hold that where the ordinance declares that no contract shall be signed and'executed until an appropriation is made, it means (according to its plain letter) that no such contract shall be made or concluded. And this construction is, we think, corroborated by the nineteenth section of the act of the legislature amending the city charter, .before referred to. By that section it is provided that no expense shall be incurred by any of the departments or officers thereof, whether the object of the expenditure shall have been ordered by the common council or not, unless an- appropriation shall have been previously made, concerning, such expense. If the street-commissioner can, without an appropriation, bind the common council by a contract necessarily involving a large expenditure, it would seem that the spirit, at least, of this provision would be violated.
On the whole, we are of opinion that the judgment entered on the report of the referee be reversed, and the rule of reference be discharged.